## JOSEPH DOREMUS v. JOHN M. BUSH.

A debtor under bond, usually called an insolvent bond, need not surrender, and be placed in closed confinement before the filing of an undertaking by a creditor. Until the Court of Common Pleas, for some reason, make a final decision in the matter, the debtor is not bound to surrender himself into custody.

On *certiorari* to the Essex Pleas.    In matter of insolvency.

The case was heard upon the following statement of facts, agreed on by the counsel of the parties respectively.

The said Joseph Doremus, as surviving partner of Peter and Thomas L. Doremus, obtained a judgment against the said John M. Bush, on the 5th day of March, 1860, in the court for the trial of small causes, before Jonas S. Crum, esq., a justice of the peace in and for said county, for the sum of ninety dollars and ninety-five cents, including costs; and an execution on said judgment against the body of said Bush was issued out of said court, on the 8th of the same month, by virtue of which said Bush was arrested by a constable, and gave bond to apply for the benefit of the insolvent laws of New Jersey, according to the statute entitled "an act abolishing imprisonment on civil process in certain cases." He accordingly applied to the Court of Common Pleas of said county, who appointed the 26th day of June last as the time for hearing said application, at which said time the said Bush, and the said Doremus, as opposing creditor, appeared before the court. The said Bush was examined, and the court being about to discharge him, the said Doremus filed his undertaking according to the eighth section of the act entitled "an act for the relief of persons imprisoned on civil process." Whereupon the said Bush, although he had not obtained his discharge, went at large, without surrendering himself to the sheriff or keeper of the jail of said county, nor giving to the said sheriff or keeper the bond mentioned in the act of 24th of February, 1850, entitled "a further

supplement to the act entitled an act for the relief of persons imprisoned on civil process," approved April 16th, 1846.

The said Bush nevertheless filed his declaration and replication to the plea of the said Doremus (*pro ut* the same), and the cause came on for trial, November 1st, 1860, before the Common Pleas aforesaid. Before the jury were empaneled, the counsel of said Doremus moved the court to quash all further proceedings, upon the ground that the court had no jurisdiction in the premises, by reason of said Bush being at large as aforesaid, by which his bond, given to the constable as aforesaid, had become forfeited. After argument, the court overruled the objection, and ordered on the trial, and such proceedings were subsequently had, that said Bush was discharged by verdict and judgment of the said court thereupon.

The main reason relied on for the reversal of the judgment was that the Court of Common Pleas could not legally try the case, or give judgment of discharge thereon, because the said Bush was not in actual custody.

For the plaintiff in *certiorari*, *W. K. McDonald*.

For the defendant, *L. C. Grover*.

VREDENBURGH, J.   Bush was arrested by virtue of an execution against his body, issued, at the suit of Doremus, out of the court for the trial of small causes, and gave bond to apply for the benefit of the insolvent laws, under the " act abolishing imprisonment on civil process in certain cases." *Nix Dig.* 331, § 9.\* The Common Pleas appointed the 20th June, 1860, for his hearing, when, upon his examination, the court being about to discharge him, Doremus filed his undertaking, under the eighth section of the act for the relief of persons imprisoned on civil process (*Nix Dig.* 352, § 8),† whereupon Bush went at large, although he had not obtained his discharge, neither surrendering himself to the sheriff, nor giving any bond under the act of the 24th February,

---

\**Rev.*, p. 497, § 2.   †*Rev.*, p. 500, § 13.

1858. *Nix Dig.* 384.* Bush, however, went on and filed his declaration, upon which issue was joined. In November, 1860, the cause was tried before a jury. Before, however, the jury were empaneled, Doremus moved the court to quash all further proceedings, on the ground that the court had no jurisdiction, by reason of Bush being at large. The question is, had the Pleas of Essex jurisdiction of the case at the time it came on for trial before the jury?

At the common law, when a man was arrested for debt, he stayed in prison until he paid either the debt of the plaintiff or the debt of nature. The act of 1795, revised in 1846, (*Nix. Dig.* 351) allowed a debtor in actual confinement to apply to be discharged by the Common Pleas. Under this act, the court obtained jurisdiction by virtue of the *imprisonment*. The act of April 15th, 1846, (*Nix. Dig.* 331)† to a certain extent abolished imprisonment for debt. Its first section prescribes that any person held in custody by any officer in any civil action shall be *discharged* from custody by such officer. As a matter of course, this took away from the Common Pleas all jurisdiction over such debtor as a person in custody. The debtor was discharged from custody by the express provisions of the act. This discharge, it is true, was upon certain conditions; but those conditions being complied with, the discharge from custody was none the less complete. Unless, therefore, the Pleas get jurisdiction in some way, *otherwise* than by means of the applicant being in custody, their whole jurisdiction over the matter was gone, and the execution against the debtor was a nullity as regards the creditor. The Pleas, however, did get jurisdiction over a debtor at large under this act by reason of the following provisions of the act, *viz.* that the discharge from custody should be upon the condition that the debtor shall give bond to the officer conditioned for the appearance of the debtor at the next Court of Common Pleas, and petition said court for the benefit of the insolvent laws, and would comply in all things therewith, and would appear in person

---

*Rev., p. 500, § 13.   †Rev., p. 857, § 58.

at *every subsequent* court until he shall be discharged as an insolvent debtor ; and if refused a discharge, shall surrender himself immediately thereafter to the keeper of the jail, there to remain until discharged by due course of law. And by the said act it was further provided, that such debtor shall be entitled to make application for his discharge under the insolvent laws at the next or any subsequent term after such arrest, as effectually as if actually confined in jail. This gave complete power to the Pleas to hear and discharge a debtor who *had been* in custody, but who was not in custody when he made his application for discharge.

The Pleas thus having obtained jurisdiction of the subject matter, the next question is, how long do they retain it ? The necessary inference is, until the final determination of the cause—until he is either granted his discharge or refused it.

In the case before us, the debtor did make his application according to law to be discharged, and at his instance, a special day was set down for his hearing before the Pleas. At such hearing the court were satisfied with the examination of the debtor, but the creditors were not. The court were about to discharge him, when the creditors entered into the stipulations required in such case by the eighth section of the act (*Nix Dig.* 378),\* whereupon the court remanded the said debtor to prison. The debtor did not, however, not-withstanding such remanding, surrender himself into custody, but remaining at large, went on filing his declaration under the insolvent laws, upon which the usual issue was joined and trial had, when the jury found for the debtor, and the Pleas discharged him. The plaintiff in *certiorari* contends that this discharge by the Pleas was illegal, because the debtor was not in actual custody at the trial before the jury. He contends that when the creditors filed their stipulation the debtor should have gone immediately into custody. In this I think the plaintiff is under a misapprehension. By filing the stipulation, the creditors had put it out of the power of the court to pass a final decree. Before any final

\**Rev.*, p. 500, ¿ 13.

Doremus v. Bush.

decree by the court could be made, the creditors appealed from the court to the jury.

The stipulation by creditors, in legal effect, was to continue the cause, not to settle it. It was merely laid over to be tried by a jury. The order remanding the debtor to prison was a nullity. It was an order which the Pleas had no power to make. In this regard the power of the court was regulated by the act abolishing imprisonment in certain cases, and not by the act for the relief of persons imprisoned.

This is further manifest by the condition of the debtor's bond, given to the officer on his discharge. The condition is, that he will appear at every subsequent court until discharged, and if refused a discharge, surrender. He is bound to surrender only upon a refusal of the court to discharge. Now this refusal to discharge cannot happen when the court are willing to discharge, and are only hindered from doing so by the creditors entering into the stipulation. The forfeiture of the bond for a refusal to discharge can only happen by the final decree of the court. This may happen at the special hearing if the court are not satisfied, and they refuse on that account to discharge, or it may happen when the court make a final decree of refusal upon the verdict of the jury. But until the court, for some reason, make a final decree in the matter, the debtor is not bound to surrender himself into custody. What is meant in the bond by the term refusal to discharge, is defined in the statute itself (*Nix. Dig.* 380, § 10,)* which provides, that if it shall appear to the court, or by the verdict of a jury, that the debtor has concealed any property with intent to defraud, the said debtor shall be refused his discharge, and the said court shall remand him to prison. Now this tenth section was originally enacted long before the act authorizing the bond, and it is apparent that the language of the bond was intended to refer expressly to this tenth section. The refusal mentioned in the condition of the bond is the refusal spoken of, in this tenth section. It is manifest, therefore, that the bond was not intended to be forfeited when the debtor surrendered himself into cus-

*Rev., p. 501 § 15.*

Doremus v. Bush.

tody, nor that the Pleas be ousted of jurisdiction by the creditor's stipulation, and the debtor then declining to go to jail. These consequences did not follow until the court had made a final decree of refusal to discharge *for fraud* in the debtor. This has, as far as I understand, been the universal practice in this state. I have never known an instance of a debtor going to jail merely because of the stipulation. Why, if this be so, we should still have our common jails crowded with insolvent debtors. The creditors would always stipulate, and the debtor would have to go into jail immediately, and remain there in *arcta et salva custodia* without the possibility of release until all the law's delays were satisfied.

If such had been ever deemed to be the law, it could not, I apprehend, have been left for the legislature of 1858 to make the discovery. But the plaintiff in *certiorari* contends that it is apparent that the debtor, upon the stipulation being filed, is bound to go to jail, from the provisions of the act of February 24th, 1858, 3 *Nix. Dig.* 384, § 1.* This provides that any debtor who shall be remanded to prison under the eighth section of the act of 1795 is authorized to give the jailor a bond to the creditors, conditioned that such debtor shall, in all things remaining, comply with the requirements of the insolvent laws, and shall appear before the court according to law, and if refused a discharge, surrender himself immediately to the jailor, &c. Under this act, the plaintiff in *certiorari* contends that, upon the creditor stipulating under this eighth section, the debtor must go to jail, and there stay until the litigation is got through with. And it is asked, by the plaintiff in *certiorari*, if this is not the office of the act of 1858, what is it? I answer, its office is not to lock up the insolvent debtor, but to discharge him. It is in furtherance, and not in restriction of the wise and benevolent policy of modern legislation, which is to punish not the honest, but only the *fraudulent* debtor. Before the act of 1858 was passed, if the debtor was so unfortunate as not to have been able to give bond before he made his application or before the special hearing, and he was then remanded by

*Rev., p. 500 § 13.*

the creditor's stipulation, he could not be discharged from custody at all, as the previous acts did not meet such cases, and he had to lie in jail until the final decree upon the verdict of the jury. It was to meet such cases that the act of 1858 was passed; so that now the debtor, until he is adjudged to have acted fraudulently, can be discharged from arrest upon giving bond that he will try the question of fraud, at any and all stages of the proceedings, until a final decree of fraud is made against him. I am of opinion that there was no error in the Court of Common Pleas of Essex, and that the judgment should be affirmed.

BROWN, J. The *certiorari* in this case brings up the proceedings of the Essex Common Pleas upon the application of John M. Bush for the benefit of the insolvent laws. He was arrested, gave bond under the "act abolishing imprisonment on civil process in certain cases," passed April 15th, 1846,* applied and had his hearing on a day appointed, and proved to the satisfaction of the court that he had complied with the requirements of the insolvent laws. The court being about to order his discharge, pursuant to the sixth section of the act for the relief of persons imprisoned on civil process, the plaintiff filed an undertaking according to the eighth section of the same act, so that he was not discharged. The debtor filed his declaration against his creditors, and the plaintiff his plea, and on the 1st of November, 1860, the cause came on for trial. Before the jury were empaneled, the plaintiff moved to quash the proceedings, upon the ground that the court had no jurisdiction, because the debtor was not, and had not been in confinement as an insolvent debtor, he having continued at large when the undertaking was filed. But one question is presented by the case, and that is whether a debtor under bond, usually called an insolvent bond, must surrender, and be placed in close confinement before the filing of an undertaking by a creditor. The answer to this question depends upon the proper construction of the acts above referred to. The act abolish-

*Rev., p. 497.

Doremus v. Bush.

ing imprisonment in certain cases, which authorizes a person arrested upon civil process to give bond to the officer making the arrest, was passed in 1830, subsequent to the original act for the relief of persons imprisoned upon civil process. The two acts must be construed together, and where they conflict the later enactment abrogates the former.

The last act is entitled "an act abolishing imprisonment on civil process in certain cases." The first section provides that it shall not be lawful to arrest or imprison the person of any female in any civil action. The second, that any person who may be arrested or held in custody, by any sheriff, constable, or other officer, in any civil action upon mesne process or process of execution, or upon an attachment for not performing an award, or who may surrender in discharge of bail, shall be discharged from arrest or custody by such officer, upon giving, under oath, an inventory of his property and a bond to the plaintiff in the action, with condition that he will appear before the next Court of Common Pleas, and petition the court for the benefit of the insolvent laws of this state, and comply with the requirements of said insolvent laws, and appear in person at every subsequent court until he shall be discharged as an insolvent debtor, and if refused a discharge, surrender himself immediately thereafter to the keeper of the common jail, there to remain until discharged by due course of law. The third section provides that any person arrested, and having given bond as aforesaid, shall be entitled to make application for discharge under the insolvent laws of this state, at the next or any subsequent term after such arrest, as fully and effectually as if he or they were actually confined in the common jail of the county.

The defendant, having given bond, enjoys the immunity of this statute until he is refused his discharge or forfeits his bond. The refusal to discharge, within the meaning of the second section, must be on the merits, not such refusal as will allow of a new application nor such as continues the same application without deciding the merits. The suspend-

ing the power of the court to discharge, by the creditor filing
an undertaking, is not refusal to discharge; failure to surren-
der in such case does not forfeit the bond. The same issue yet
undetermined is to be tried by jury, &c., and the parties are
continued in court for the purpose of the new trial. Judg-
ment is not yet pronounced. If the defendant is in actual
confinement, he is remanded for the purpose of holding him
until the trial. If he has given bond, he has still the right
to be at large, so that he continues to apply by filing his de-
claration and proceeding according to law. He is still an
applicant for the benefit of the insolvent laws. He says, in
his declaration, that he has complied with the act in all
things, and is entitled to his discharge. The creditor denies
this by his plea, and upon this issue the trial of the applica-
tion proceeds to verdict. Pursuant to the verdict, he is
either discharged or refused. If refused, his bond requires
surrender; he must surrender, or it is forfeited. The court
have no right, at any time, to order him in confinement.

Judgment of the Common Pleas affirmed.

CITED in *State, ex rel. Ricardo,* v. *Common Pleas of Passaic,* 9 *Vroom* 183.